UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIG INSURANCE COMPANY,<br><br>                                    Plaintiff,<br><br>         vs.<br><br>R&Q REINSURANCE COMPANY and GLOBAL REINSURANCE CORPORATION,<br><br><br>                                    Defendants. | COMPLAINT |

Plaintiff TIG Insurance Company ("TIG" or "Plaintiff"), by and through its attorneys, Gimigliano Mauriello & Maloney, by way of Complaint against defendants R&Q Reinsurance Company ("R&Q Re") and Global Reinsurance Corporation ("Global") (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

1.      In this action, Plaintiff seeks damages and other relief in connection with Defendants' breach of certain reinsurance contracts.  Specifically, Plaintiff is entitled to recover $322,365.25 that Defendants have refused to promptly pay as required by those contracts.

## THE PARTIES

2.      TIG is a corporation organized and existing under the laws of the State of California.  At all relevant times hereto, TIG had a principal place of business located in Manchester, New Hampshire.  TIG is the successor by merger to International Surplus Lines Insurance Company ("ISLIC") and Ranger Insurance Company ("Ranger").  References herein to "TIG" shall mean and include "ISLIC" and "Ranger" where appropriate.

3.     R&Q Re is a corporation organized and existing under the laws of the State of Pennsylvania.  Upon information and belief, at all relevant times hereto, R&Q Re had its principal place of business located in Philadelphia, Pennsylvania.  Upon information and belief, R&Q Re is responsible for the reinsurance obligations of INA Reinsurance and Insurance Company of North America ("INA Re") with respect to certain TIG policies issued to Hercules, Inc. ("Hercules").  References herein to "R&Q Re" shall mean and include "INA Re" where appropriate.

4.     Global is a corporation organized and existing under the laws of the State of West Virginia.  Upon information and belief, at all relevant times hereto, Global had its principal place of business located in New York, New York.  Upon information and belief, Global is responsible for its agreed share of a reinsurance facultative certificate issued by the Excess and Casualty Reinsurance Association ("ECRA") reinsuring a TIG policy issued to Weil-McClain Company, Inc. ("W-M").   References herein to "Global" shall mean and include "ECRA" where appropriate.

## SUBJECT MATTER JURISDICTION

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## PERSONAL JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over Defendants because the reinsurance contracts were negotiated, brokered, formed, issued and substantially performed in New York and Defendants conduct substantial business in New York.  Additionally, Global's principal place of business is located in New York.

7.     Venue is proper in this Court because substantial activities and events giving rise to this action occurred within this Court's jurisdiction and because Global's principal place of business is located within this Court's jurisdiction.

## FACTS

**A.     Plaintiff's Reinsurance Relationship With Defendants.**

8.     TIG was in the business of providing insurance to companies throughout the United States.  In this capacity, TIG issued liability policies to Hercules and W-M for various policy periods in the 1970s.

9.     TIG subsequently reinsured these risks through facultative placements with several reinsurers, including Defendants.

10.     Facultative reinsurance, as opposed to treaty reinsurance, is a transaction between a reinsured ceding company (here, TIG), and a reinsurer (here, Defendants), whereby the reinsurer agrees to indemnify the ceding company for either a portion or the entire risk of loss for a specific underlying insurance policy.  The cedant pays premium to the reinsurer upon the placement of the facultative reinsurance certificate.

11.     INA Re issued the following reinsurance certificates (collectively, the "INA Reinsurance Agreements") at issue here with respect to the Hercules policies:  1) certificate number FRC 01 86 31 reinsuring ISLIC policy number XSI 3742 with a policy period of April 1, 1977 through April 1, 1978; 2) certificate number FRC 02 20 22 reinsuring ISLIC policy number XSI 4478 with a policy period of April 1, 1978 through April 1, 1979; and 3) certificate number FRC 02 66 57 reinsuring ISLIC policy number XSI 5522 with a policy period of April 1, 1979 through April 1, 1980.

12.     ECRA issued certificate number 092-023 reinsuring Ranger policy number EU 630814 with a policy period of December 31, 1975 through December 31, 1976 (the "ECRA Certificate").

13.     The INA Reinsurance Agreements and ECRA Certificates (collectively, the "Reinsurance Agreements") provide the terms and conditions which define the contractual relationship between the parties.  Each certificate issued by INA Re to TIG utilized materially standard "General Conditions" that set forth those terms and conditions.  Those terms and conditions include the following relevant provisions:

### 1.     APPLICATION OF CERTIFICATE

**The Reinsurer agrees to indemnify the Company against loss or damage which the Company is legally obligated to pay under the Company's policy reinsured**, resulting from occurrences taking place during the period this Certificate is in effect, subject to the Reinsurance Accepted limits shown in the Declarations.  The liability of the Reinsurer shall follow that of the Company and, except as otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations, shall be subject in all respects to all of the terms and conditions of the Company's policy except such as may purport to create a direct obligation of the Reinsurer to the original Insured.

. . . .

### 4.     LOSS SETTLEMENT

**All claims involving this reinsurance, when settled by the Company shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements**, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that -the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a contributing excess basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the

Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgement or award. However, should the Company's policy limit include expenses, the Reinsurer's maximum limit of liability shall be as stated in Item 4, of the Declarations.

**Payment of its proportion of loss and expense paid by the Company, will be made by the Reinsurer to the Company <u>promptly</u> following receipt of proof of loss**.

(emphasis added.)

14.     In summary, INA Re "agree[d] to indemnify" TIG and was "bound to pay its proportion" of the assumed risk to TIG "promptly following receipt of proof of loss."

15.     The ECRA Certificate includes a similar provision:

3.     **All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements**, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award.

**Payment of its proportion of loss and expense incurred by the Company will be made by the Reinsurer to the Company <u>promptly</u> following receipt of proof of loss.**

(emphasis added.)

16.     Thus, like INA Re, ECRA agreed to pay its share of "loss and expense . . . promptly following receipt of proof of loss."

17.     TIG timely paid all premiums due and has satisfied all other terms and conditions of the Reinsurance Agreements and is not in default of any condition precedent to coverage.

5

**B.      The Claims Payments Made By TIG.**

18.      The underlying insureds (or their successors, parents or affiliates) – Hercules and W-M – are defendants in a large number of lawsuits filed across the country by plaintiffs claiming, among other damages, asbestos-related injuries.

19.      To date, these insureds have expended tens of millions of dollars in loss payments and defense expense payments.  As part of their obligations pursuant to the insurance policies issued to these insureds, TIG paid a share of the underlying insured's loss and defense payments. These payments were subject to reimbursement by Defendants pursuant to the relevant Reinsurance Agreements.

**C.      Defendants' Failure to Pay TIG Pursuant To The Reinsurance Agreements.**

20.      In compliance with its obligations under the Reinsurance Agreements, TIG provided Defendants with proofs of loss and billings which reflected the claims payments made by TIG on these risks, and requested payment by Defendants of their share of the billings.

21.      The billings, which represent funds due and owing to TIG from Defendants, were sent to Defendants on various dates in 2021 and 2022.

22.      Currently, the total balance due and owing from R&Q Re on the Hercules claims is $91,502.74.

23.      Currently, the total balance due and owing from Global on the W-M claims is $230,862.51.

24.      TIG has repeatedly demanded payment from Defendants of the balance due and owing for their share of the ceded losses and expenses.

25.      In fact, Defendants have acknowledged that they owe these amounts.  However, Defendants have refused to promptly release the funds to TIG.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT – AS AGAINST R&Q)**

26.     TIG hereby realleges and incorporates by reference the allegations set forth above as though fully set forth herein.

27.     TIG and R&Q Re entered into contracts of facultative reinsurance as memorialized by the INA Reinsurance Agreements.

28.     TIG has fully performed its obligations under the INA Reinsurance Agreements and has paid all premiums due thereunder.

29.     TIG has properly billed R&Q Re $326,418.83, which represents R&Q Re's legitimate reinsurance obligation to TIG with respect to the Hercules claims.

30.     R&Q Re has previously acknowledged to TIG its responsibility to TIG to pay the Hercules billing, and paid $234,916.09 of the $326,418.83 Hercules claim billings.

31.     Despite these admissions, R&Q Re has breached the INA Reinsurance Agreements and its duty of utmost good faith to TIG by refusing to pay the remaining $91,502.73 of the billings.

32.     As a result, TIG has been damaged and is entitled to damages from R&Q Re for its breach of contract in the amount of $91,502.74, plus prejudgment interest, attorneys' fees, and costs of suit.

**SECOND CAUSE OF ACTION**
**(BREACH OF CONTRACT – AS AGAINST GLOBAL)**

33.     TIG hereby realleges and incorporates by reference the allegations set forth above as though fully set forth herein.

34.     TIG and Global entered into contracts of facultative reinsurance as memorialized by the ECRA Certificate.

7

35.     TIG has fully performed its obligations under the ECRA Certificate and has paid all premiums due thereunder.

36.     TIG has properly billed Global $230,862.51, which represents Global's legitimate reinsurance obligation to TIG with respect to the W-M claims.

37.     Global has previously acknowledged to TIG its responsibility to TIG to pay the W-M billings.

38.     Despite these admissions, Global has breached the ECRA Certificate and its duty of utmost good faith to TIG by refusing to pay the billings in the amount of $230,862.51.

39.     As a result, TIG has been damaged and is entitled to damages from Global for its breach of contract in the amount of $230,862.51, plus prejudgment interest, attorneys' fees, and costs of suit.

**THIRD CAUSE OF ACTION**
**(DECLARATORY RELIEF)**

40.     TIG hereby realleges and incorporates by reference the allegations set forth above as though fully set forth herein.

41.     An actual controversy exists with respect to the parties' rights under the Reinsurance Agreements.

42.     Specifically, the parties disagree as to the required promptness of payment required by the Reinsurance Agreements.

43.     TIG is entitled to a declaration of its rights under the Reinsurance Agreements that Defendants shall promptly pay to TIG all future billings which arise thereunder.

## **PRAYER FOR RELIEF**

WHEREFORE, TIG respectfully requests judgment against Defendants granting the following relief:

A.      Compensatory damages in an amount to be determined at trial, but not less than $322,365.25 with respect to the current billings;

B.      Prejudgment interest;

C.      Attorneys' fees;

D.      Costs of suit;

E.      A declaration that Defendants are obligated to pay past, current and future billings from TIG pursuant to the Reinsurance Agreements in a timely manner; and

F.      Such further relief that the Court determines to be just and reasonable.


By: */s/ Stephen V. Gimigliano*

Stephen V. Gimigliano
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360

16 West 22nd Street, 10th Floor
New York, New York 10010
(646) 859-5800
sgimigliano@lawgmm.com

Attorneys for Plaintiff
TIG Insurance Company


Dated: December 29, 2022